**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|   |   |   |
|---|---|---|
| RICHARD GONZALES, et al. | : | |
| | : | Civil No. CCB-06-3053 |
| v. | : | consolidated with |
| | : | 06-mc-0354-CCB |
| ROBERT PAZDA, et al. | : | |
| | : | |

**MEMORANDUM**

Now pending before the court is a Motion for Reconsideration of this court's January 29, 2007 oral ruling brought by Robert Pazda.[1] The motion has been opposed by the government. No further hearing is necessary. *See* Local Rule 105.6. For the reasons stated below, Mr. Pazda's motion will be denied.[2]

**BACKGROUND**

On January 29, 2007, this court held oral arguments on Mr. Pazda's Petition for Certification of Federal Employment pursuant to 28 U.S.C. § 2679(d)(3). Issuing an oral ruling from the bench, I held, based on the reasons stated on the record, that Mr. Pazda was not acting in the scope of his employment at the time of the automobile accident in which he was involved while driving home from BWI airport following a conference he attended in Arizona. I delayed issuing a final order, however, until Mr. Pazda's counsel had an opportunity to consult further

---

[1] This automobile tort action, *Gonzales v. Pazda*, CCB-06-3053, was initially filed in Baltimore City Circuit Court. Mr. Pazda removed the original action to federal court, but then separately filed a motion for certification as *Pazda v. United States*, 06-mc-0354. The cases were thereafter consolidated.

[2] Also pending is Mr. Pazda's Motion to Seal, which will be denied in light of the government's Response (docket entry no. 53).

1

with her client.

Subsequently, Mr. Pazda's counsel was permitted to submit new evidence, including: (1) a memorandum from attorney Peggy L. Gieseking requesting the army to reconsider its recommendation to the Department of Justice to deny certification;[3] and (2) an affidavit by Mr. Pazda describing in detail the purpose of attending the conference in Arizona.[4]

Specifically, Mr. Pazda's affidavit discloses the army's need for an automated chemical detection kit to be used on the battlefield, which required the selection of an appropriate microcontroller. Tasked with evaluating and comparing available microcontrollers, Mr. Pazda attended a five-day conference on the microcontroller manufactured by Microchip Technology, Inc. ("Microchip"). At the Microchip conference, Mr. Pazda began developing software code for the microcontroller, which he brought back with him on a floppy disk. On his return trip home, Mr. Pazda also transported various other materials received at the conference, including copies of presentations, sample programming software, and Microchip microcontrollers. These

---

[3] Ms. Gieseking is an attorney-advisor with the U.S. Army Research, Development & Engineering Command ("RDECOM") at Aberdeen Proving Ground, where Mr. Pazda is employed. Following the hearing in January, she was directed to review the army's recommended denial of employment certification in this action. Ms. Gieseking wrote the memorandum entered into evidence in an attempt to persuade her supervisors to make a formal request to the Army Litigation Division to reconsider its position regarding Mr. Pazda's scope of employment at the time of the accident. (Gov't Opp'n, Ex. 2 ¶ 8.) She based her conclusions, however, on her belief that the army should not require as a condition of certification the legally necessary element of control, which this court finds lacking in the present case. (Pazda Mot., Ex. 1 at 5.) The Army's Litigation Division did not authorize her memorandum and confirmed in writing that it does not represent the official position of the army. (Gov't Opp'n, Ex. 1.) Nor has the U.S. Attorney issued a certification that Mr. Pazda was acting in the scope of his employment at the time of the accident.

[4] Mr. Pazda apparently had not previously disclosed this information to his lawyers due to his concern that the project he was working on might be classified government information.

2

materials were in Mr. Pazda's vehicle at the time of the accident.  Mr. Pazda's supervisor, Mark Schlein, had instructed him to bring back any microcontroller-related materials that he could obtain at the conference, as well as any partially or fully developed microcontroller computer programs he created.  (Pazda Mot., Ex. 2 ¶ 26.)  Mr. Pazda testifies that the processes he began to evaluate at the Microchip conference and the materials he brought back with him "ultimately aided and allowed me to completely automate the M256A1 Chemical Detection Kit."  (*Id*. ¶ 35.)

Ms. Gieseking's memorandum confirms many of the facts asserted in Mr. Pazda's affidavit.  In addition, Ms. Gieseking reasons: (1) Mr. Pazda was in a travel status at the time of his accident pursuant to his temporary duty travel (TDY) orders; (2) travel by employees is highly regulated by the department of defense ("DoD") under the DoD Joint Travel Regulations ("JTRs"); and (3) whereas employees are generally not compensated for their work commute, Mr. Pazda's travel is subject to compensation under 5 U.S.C § 5542(b)(2)(B) & 5 C.F.R § 550.112(g)(2).  These factors, combined with her belief that requiring "an element of control be present dilutes this doctrine [of respondeat superior] and is detrimental to all federal employers as well as the federal Government," led Ms. Gieseking to the conclusion that the army should reconsider its position regarding Mr. Pazda's scope of employment.  (Pazda Mot., Ex. 1 at 5.)

## ANALYSIS

In light of the new evidence submitted, Mr. Pazda asks this court to reconsider its prior ruling holding that he was not acting in the scope of his employment at the time of the accident.  First, Mr. Pazda asserts that the evidence outlined above combined with the DoD JTRs, to which his counsel for the first time now cites, show that the government had actual control over the

3

operation of Mr. Pazda's vehicle or that such control can be inferred from the vital importance of the use of Mr. Pazda's vehicle in transporting the conference materials.  This court sees no reason, however, to reconsider its initial holding.  Mr. Pazda's TDY orders created a standard travel authorization and reimbursement situation.  While the fact that Mr. Pazda was transporting materials from the workshop on his return trip home may help show that he was acting in furtherance of his employer's interests at the time of the accident, it is not sufficient to establish the crucial element of control that Maryland law requires in automobile respondeat superior cases.[5]  *See, e.g.*, *Buckingham v. United States*, 124 F. Supp. 2d 943, 944 (D. Md. 2000); *Oaks v. Connors*, 660 A.2d 423, 426-27 (Md. 1995); *Dhanraj v. Potomac Elec. Power Co.*, 506 A.2d 224, 226 (Md. 1986).

Nevertheless, Mr. Pazda also now asserts that the facts of this case fall within a special mission exception to Maryland's "coming and going" rule.  The "special mission or errand" exception, which has been applied in the context of workers' compensation law, "provides that an employee is acting in the course of employment when traveling on a special mission or errand at the request of the employer and in furtherance of the employer's business, even if the journey is one that is to or from the workplace."  *Barnes v. Children's Hospital*, 675 A.2d 558, 564 (Md. Ct. Spec. App. 1996); *see also Reisinger-Siehler Co. v. Perry*, 167 A. 51 (Md. 1933).  Thus, "when the making of the journey or the special degree of urgency or inconvenience under which the journey is made, is of such a character that *the journey itself* constitutes a substantial part of the service that the employee is rendering, an employee is considered to be acting in the course

---

[5] Nor is it unusual for an employer to expect an employee attending a business conference to bring back relevant materials obtained at the conference for the benefit of the workplace.

of employment." *Barnes*, 675 A.2d at 564.  In determining whether "a mission is sufficiently 'special' to be brought within the ambit of the rule,'" courts consider a variety of factors, including: (1) the relative regularity or unusualness of the particular journey; (2) the relative onerousness of the journey compared with the service to be performed; and (3) the "suddenness" of the call to work or whether it was made under an "element of urgency." *Id*. at 565-566.

Assuming without deciding that this exception is applicable outside the workers compensation context, *see Dhanraj*, 506 A.2d at 227-28, Mr. Pazda has failed to show that the facts of this case fall within the exception's contours.  The transportation of the conference materials was incidental to, rather than a substantial or integral part of, the service Mr. Pazda was performing for the army.  The primary purpose of the travel was to attend a five-day workshop to learn how to program and use the Microchip microcontrollers in determining whether they would fit the government's purposes, which the army ultimately decided they would not.  (Pazda Mot., Ex. 2 ¶ 26-27.)  The materials Mr. Pazda received at the conference, as well as the basic software code he developed at the training sessions, were merely added benefits to his attendance at the conference.  (*Id*. ¶ 26.)  In addition, the army's need for an appropriate microcontroller in developing an automated chemical detection kit, while important to the United States mission in Iraq, does not reflect the degree of urgency contemplated by the special missions exception.  *See Barnes*, 675 A.2d 558, 565-66  ("When the employee must drop everything and travel to the workplace, this indicates that the travel itself could be part of the service rendered.").  Mr. Pazda, by contrast, took the materials home with him, not directly to work; indeed the materials were not brought to work until his return for regular duty on July 22, 2003.

Consequently, as I ruled earlier, this court is not presented with the kind of special circumstances that the Maryland Court of Appeals would accept as bringing this case outside the ordinary "coming and going" rule. Thus, Mr. Pazda's Motion for Reconsideration will be denied. As there is no basis for jurisdiction in this court other than the application of the Federal Tort Claims Act, the underlying case will be remanded to Baltimore City Circuit Court.

A separate order follows.


  July 9, 2007  　　　　　　　　　　　　　　　　  /s/  
　　　Date　　　　　　　　　　　　　　　　Catherine C. Blake  
　　　　　　　　　　　　　　　　　　　　　United States District Judge